IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER PARKS,                                )<br>                                                          )<br>         Plaintiff,                                   )<br>                                                          )<br>    v.                                                    )<br>                                                          )<br>MARTIN O'MALLEY,[1]                      )<br>Commissioner of the Social              )<br>Security Administration                     )<br>                                                          )<br>         Defendant.                              ) | Case No. 23-CV-41-GLJ |

## OPINION AND ORDER

Claimant Jennifer Parks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

Claimant was forty-two years old at the time of the most recent administrative hearing. (Tr. 45, 415). She completed two years of college and has past relevant work as a credit and loans collections supervisor and a credit and collection manager. (Tr. 34, 50). Claimant alleges an amended onset date of November 20, 2019, due to limitations imposed by "back issues, [PCOS], leg issues, feet issues, neck issues, and shoulder issues." (Tr. 418).

## Procedural History

On December 20, 2019, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 342-56). On April 21, 2021, Administrative Law Judge ("ALJ") Doug Gabbard, II, conducted an administrative hearing and determined Claimant was not disabled on May 17, 2021. (Tr. 63-86, 166-79). The Appeals Council granted review and remanded the case, finding that the ALJ's decision did not contain an adequate evaluation of the medical source opinion of Charles Higdon, APRN-NP. (Tr. 186-188). On July 21, 2022, ALJ Gabbard conducted a second administrative hearing and again found Claimant not disabled on August 26, 2022. (Tr. 18-35, 43-62). The Appeals Council denied review, making the

ALJ's August 26, 2022, opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-6); *See* 20 C.F.R. § 404.971.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. (Tr. 33-34). At step two he determined that Claimant had the severe impairments of lumbar spine degenerative disc disease, status post L4-5 discectomy and fusion in 2006, and mild bilateral foot degenerative joint disease. (Tr. 20). He found at step three that Claimant did not meet any Listing. (Tr. 23). At step four he found Claimant had the residual functional capacity ("RFC") to perform sedentary work except Claimant can perform frequent climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and that she can occasionally stoop, kneel, crouch, and crawl, and frequently balance. (Tr. 24). The ALJ then concluded that Claimant could return to her past relevant work as a credit and collection manager, as generally performed, and was therefore not disabled. (Tr. 34-35).

### Review

Claimant contends that the ALJ erred by failing to: (1) properly analyze the medical source opinions of Dr. Thomas H. Conklin Jr., Dr. Gina Clark, and Nurse Practitioner Charles Higdon; (2) properly analyze Claimant's subjective statements; and (3) support his decision with substantial evidence. The Court agrees with Claimant's first and third propositions.

The relevant medical evidence reveals that in 2006 Claimant underwent an L4-5 discectomy and fusion. (Tr. 515, 749). Thirteen years later, in November 2019, Claimant presented to Thomas H. Conklin, Jr. D.O. with lumbar pain radicular to the left side. (Tr.

640). Dr. Conklin referred Claimant to Sri K. Reddy, MD, who ordered an MRI of Claimant's lumbar in addition to a lumbar corset (Tr. 502). The MRI was conducted on December 4, 2019, and revealed: (1) mild disc bulging, narrowing of the spinal canal, crowding of the cauda equina without evidence of neural compression, mild right and mild-to-moderate left foraminal stenosis, and contact of the left exiting nerve root without evidence of deformity at L3-L4; (2) post-surgical changes, no evidence of recurrent disc herniation, no spinal canal stenosis, mild right foraminal stenosis, no left foraminal stenosis, and contact of the right exiting nerve root without evidence of deformity at L4-L5; and (3) mild circumferential disc osteophyte complex with central and left subarticular disc protrusion, mild bilateral foraminal stenosis, and possible compression of the left transiting S1 nerve root at L5-S1. (Tr. 503-04). The post visit progress notes indicated Claimant was independent with daily activities. (Tr. 505). Physical examination of Claimant revealed lumbosacral pain with flexion and extension, and tenderness over the paraspinals. (Tr. 506).

On December 18th, 2019, Claimant visited Ralph T. Boone, MD, who noted Claimant had developed degenerative spondylolisthesis L3-4 with spinal stenosis. (Tr. 515). Dr. Boone indicated that he believed the L3-L4 spondylolisthesis with spinal stenosis at L3-L4 to be the primary pain generator and not the L5-S1 disc protrusion. (Tr. 515). On December 31, 2019, Claimant presented to Andrew Revelis, M.D., for a L3-L4 intralaminar lumbar epidural steroid injection. (Tr. 530).

On January 3, 2020, Claimant reported that despite receiving the steroid injection, the pain she was experiencing did not change. (Tr. 640). Dr. Conklin noted that Claimant

reported she was able to sit less than thirty minutes, has constant pain while she is walking, and must be able to rest for thirty minutes. *Id.* On January 15, 2020, Claimant reported to Physician Assistant Clay Dark that the lumbar steroid injection did not help her pain but worsened her symptoms. (Tr. 512). PA Dark's treatment notes indicate Claimant had failed conservative measures, and that she was ready to proceed to definitive treatment. (Tr. 512). He informed Claimant that definitive treatment would "involve removal of TSRH instrumentation L4-L5, L3-L4 laminectomy and fusion with iliac crest bone graft or marrow aspirate, and placement of instrumentation." *Id.* Claimant indicated that she would like to proceed with this treatment as soon as possible. *Id.*

Claimant returned to Dr. Revelis on February 17, 2020, presenting with chronic axial back pain and bilateral lower extremity pain. (Tr. 524). Dr. Revelis' review of Claimant's lumbar revealed a decreased range of motion, positive facet loading bilaterally, pain with extension of lumbar spine, pain with standing, and her spine was tender to palpation over the lower lumbar facet joints. (Tr. 526). Dr. Revelis' diagnoses at this time included low back pain, lumbar degenerative disc disease, post laminectomy syndrome, lumbosacral spondylosis without radiculopathy or myelopathy, chronic pain syndrome, and obesity. *Id.*

Claimant continued to report pelvic and lumbar pain. (Tr. 641-42). In June 2021, Claimant established care with Gina Clark, D.O. (Tr. 693). Dr. Clark noted that Claimant's lumbosacral spine exhibited tenderness on palpation and spasms of the paraspinal muscles but straight-leg raising tests of both the left and right legs were negative. (Tr. 693). Dr. Clark ordered an x-ray of Claimant's lumbar which revealed five typical appearing lumbar

vertebrae with pedicles, processes, vertebral heights and intervertebral disk spaces that were all well maintained without evidence of fractures, subluxations, spondylolisthesis or significant degenerative changes (Tr. 653, 693). Visits to Dr. Clark through June 2022 reflect Claimant was in no acute distress. (Tr. 683-748, 692, 699, 706, 712, 719, 727, 733, 740, 746).

In July 2021, Claimant visited Daniel Morris, DO, for pain management and evaluation of back pain that radiated into her hips, legs, and feet. (Tr. 749). A review of Claimant's systems revealed musculoskeletal pain with flexion and extension, reduced range of motion, pain/tenderness to palpation at L5-S1 pain with trunk rotation, and mild to moderate radiation. (Tr. 750).

Dr. Conklin completed a medical RFC assessment in April 2021, in which he indicated Claimant could sit for less than 2 hours and stand/walk for 2-3 hours in an eight-hour workday but needed to lie down or recline for 4-5 hours of the workday. (Tr. 643). Dr. Conklin indicated that that Claimant's radicular lumbar pain and neuropathy supported his assessment. *Id.* Similarly, in March 2022, Dr. Clark completed a medical RFC assessment in which she indicated Claimant could sit/stand/walk for less than 2 hours during an eight-hour workday and would need to recline for 2-3 hours of the workday. (Tr. 644). Dr. Clark supported her assessment by stating "while examining the patient, she cannot sit still. She has to go from sitting to standing. She also does lean forward, and she appears to be in pain. There also is decreased sensation" in her bilateral lower extremities. (Tr. 644).

On August 6th, 2020, Claimant presented for a physical consultative examination before Charles Higdon APRN. (Tr. 555-67). Nurse Practitioner Higdon's impression was that Claimant had a decreased range of motion to her lower back with moderate to severe pain, decreased range of motion to her right hip with moderate to severe pain, and tenderness to her right lower flank with palpation and a notable knot. (Tr. 561-63). He indicated Claimant ambulates slumped and slow, had difficulty standing from a chair and needed assistance, had extreme difficulty lifting her right leg off the exam table without pain, and when she ambulated into the clinic she needed to stop and sit before transitioning to the room. (Tr. 561). He concluded that Claimant could not stand or sit for long periods of time and will not be able to ambulate without severe pain. (Tr. 561). He also indicated Claimant's pain will likely increase and her ability to carry out her daily activities will diminish. *Id.*

In late 2020, State examiners determined initially and upon reconsideration that Claimant could stand/walk for two hours in an eight-hour workday and sit for six hours in an eight-hour day, but she must periodically alternate between sitting and standing. (Tr. 100, 114). They further concluded she could frequently balance, climb ramps and stairs, but only occasionally crawl, stoop, and crouch, and never climb ladders, ropes, or scaffolds. (Tr. 100, 114).

At the April 2021 administrative hearing, Claimant testified her pain is sharp and proceeds down her legs and she must lay down throughout the day to alleviate her constant pain. (Tr. 72-73). (Tr. 73-74). She noted that her doctors recommended surgery, but she could afford neither surgery nor physical therapy. (Tr. 74). She further testified that she

cannot lift more than 10 pounds and she is only able to sit for fifteen minutes and walk for thirty minutes before she must lay down which she does for 75% of the day. (Tr. 75-76, 77). As to daily activities, she testified that her children assist her with household chores because she is unable to dust, mop, or vacuum. (Tr. 78). However, she can fold the laundry for a short period of time, and she tries to cook dinner, but she must sit down frequently while cooking. (Tr. 78). She goes grocery shopping but must use the motorized carts and will have to lay down in the car if she begins to experience excessive pain. (Tr. 78-79). She testified that she has difficulties maintaining her hygiene as she can only shower every few days to once a week, and her husband must help her get dressed. (Tr. 79).

At the July 2022 administrative hearing Claimant testified that her condition had worsened, requiring here to lay down 90% of the day, and that she must alternate between sitting and standing more frequently. (Tr. 52-53, 55). She further indicated she could no longer go to the grocery store or cook anymore. (Tr. 53). She again testified that she remains on the same medication and had not been able to get surgery due to financial constraints. (Tr. 54).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 58-60). The VE testified that such a claimant could return to her past work as a credit and loan collections supervisor and credit and collections manager, as generally performed. (Tr. 59). The ALJ then offered a modified hypothetical in which the individual must be allowed to alternate between sitting and standing every 15 to 30 minutes throughout the workday but without leaving the workstation. (Tr. 59-60). The VE testified that both the credit and loan

collections supervisor and the credit and collections manager would still be applicable. (Tr. 59). The ALJ then offered a third hypothetical in which the individual must be allowed to lay down 75% to 90% of the day, would have frequent unscheduled work absences, at least two per month, and would be off task 20% of the workday due to pain. (Tr. 59-60). The VE testified such a person would not be employable. (Tr. 59-60).

In his written opinion at step four, the ALJ discussed Claimant's April 2021 and July 2022 hearing testimony as it pertained to Claimant's pain and ability to stand, walk, and sit without laying down, and he summarized much of the medical evidence in the record. (Tr. 24-34). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records (Tr. 25, 33). The ALJ found the opinion of Dr. Conklin unpersuasive because it lacked support because Dr. Conklin recorded "little in the way of abnormal examination findings to support the extreme limitation he opined" and his opinion was inconsistent with the other evidence in the record because Claimant reported being independent with daily activities, engaged in the same medication regimen, and rarely, if ever, presented in acute distress in the longitudinal record. (Tr. 28-30). He also found the opinions of Dr. Gina Clark and Nurse Practitioner Charles Higdon unpersuasive on substantially the same grounds. (Tr. 30-31). Conversely, the ALJ then found the state agency physician's medical findings persuasive, noting they were consistent with Claimant continuing on the same medication, her assertion in 2019 that she was independent with daily activities, the treatment notes in July 2021 that her pain was intermittent, and the records indicating Claimant was not in acute distress. (Tr. 32-33).

### I.     Medical Opinions of Dr. Conklin, Dr. Clark, and Nurse Practitioner Higdon

Claimant first challenges the ALJ's RFC assessment, contending that the ALJ erred in evaluating the medical opinions of Dr. Conklin, Dr. Clark, and Nurse Practitioner Higdon. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with

the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) and (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(3). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(C)(2).

Here, the ALJ concluded the opinions of Dr. Conklin and Dr. Clark were inconsistent with the medical evidence as a whole because they were "lacking in consistency with the generally consistent examination findings as the claimant exhibited when she reported being independent with daily activities, and with the claimant rarely, if ever, being in acute distress on continued tramadol 50mg every four hours as needed, and over-the-counter Tylenol and ibuprofen, as discussed in this decision and incorporated herein by reference." (Tr. 29-32). However, in assessing the consistency of these opinions the ALJ did not engage with or evaluate the records that were consistent with Dr. Conklin's or Dr. Clark's opinions except to note that their opinions were consistent with one another, and consistent with Nurse Practitioner Higdon's opinion, but that all three of their opinions were unpersuasive. (Tr. 29-32). The ALJ failed to analyze and discuss, *inter alia*: (i) the 2019 MRI which revealed in part degenerative spondylolisthesis at L3-L4 with spinal stenosis, and nerve root contact at L3-L4, L4-L5, and L5-S1, with possible compression at L5-S1 (Tr. 503-504); (ii) PA Dark's assessment that Claimant failed conservative treatment and recommendation that she undergo surgery; (iii) instances in which Claimant presented with reduced range of motion in her lumbar in addition to experiencing pain on flexion/extension. (Tr. 512, 517, 688, 687, 693, 712, 730, 733, 740); (iv) Claimant's 2020

pain management visit at which Claimant presented with an antalgic gait, had decreased range of motion in the lumbar with tenderness to palpation and pain with extension and standing (Tr. 526); (iv) Claimant's 2021 pain management visit showing pain with the flexion, extension, and rotation of her lumbar, and decreased range of motion of the lumbar with mild to moderate radiation despite appearing with a normal gait and stance (Tr. 750); (v) and Nurse Practitioner Higdon's consultative examination findings. (Tr. 555-65). Additionally, the ALJ did not discuss Dr. Conklin's treatment notes when assessing the consistency of Dr. Clark's opinion, or Dr. Clark's treatment notes when assessing the consistency of Dr. Conklin's opinion. (Tr. 29-30).

     In contrast to his analysis of Dr. Conklin and Dr. Clark's medical opinions, the ALJ spent a considerable amount of time analyzing the persuasiveness of Nurse Practitioner Higdon's opinion; however, he does not analyze or acknowledge much of the evidence that is consistent with NP Higdon's opinion. In analyzing NP Higdon's medical opinion, the ALJ does mention Claimant's antalgic gait and documented pain at her 2020 pain management visit and her mild to moderate radicular pain at her 2021 pain management visit. (Tr. 32). The ALJ also briefly mentions the December 4, 2019, MRI but only to note that Nurse Practitioner Higdon discussed the "results as interpreted by the radiologist, though . . . orthopedic Dr. Ralph T. Boone, M.D. did not interpret any nerve root impingement." (Tr. 32). However, the ALJ does not acknowledge, anywhere, that the radiologist's interpretation revealed contact with the exiting nerve roots at L3-L4, L4-L5, and L5-S1 with possible compression of the nerve at L5-S1. (Tr. 503-04). Moreover, he does not acknowledge much of the significantly probative evidence detailed in the previous

paragraph that is consistent with NP Higdon's opinion, including but not limited to the medical opinions and treatment notes of Drs. Conklin and Clark. Instead, the ALJ utilized portions of the evidence that were favorable to finding Nurse Practitioner Higdon's opinion inconsistent such as the reports that Claimant was not in acute distress, was maintained on the same medication, appeared comfortable on three occasions, and that her pain was recorded as intermittent on one occasion. (Tr. 32). *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

It was error for the ALJ to ignore substantial probative evidence when analyzing the consistency of Dr. Conklin's, Dr. Clark's, and Nurse Practitioner Higdon's opinions and fail to credit it as consistent. *Hardman*, 362 F.3d at 681. (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (internal citations omitted)*; Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (internal citations omitted).

Accordingly, as asserted in Claimant's third argument, the ALJ failed to support his RFC assessment with substantial evidence. As discussed above, the ALJ did not apply the

correct legal standards when evaluating the medical source opinions of Dr. Conklin, Dr. Clark, and Nurse Practitioner Higdon. The decision of the Commissioner is thus not supported by substantial evidence. *Graham v. Kijakazi*, 2022 WL 947148, at *1 (E.D. Okla. Mar. 29, 2022) ("The Magistrate Judge found that correct legal standards were not applied by the Administrative Law Judge in failing to properly evaluate two medical source opinions and the decision of the Commissioner is therefore not supported by substantial evidence.").

## II.   Subjective Symptom Analysis

Finally, Claimant argues that the ALJ committed reversible error because he failed to properly account for the consistency of her subjective statements with regard to her pain and her need to lay down throughout the day. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms.

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] *See also Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992) (The ALJ must "consider (1) whether a Claimant established a pain-producing impairment by objective evidence; (2) if so, whether

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character. *Id.* at *2.

there is a 'loose nexus' between the proven impairment and Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling."). Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th

---

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g.*, *Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. R. 16–3p, 2017 WL 5180304 at *10.

Claimant contends that the ALJ failed to articulate how the above factors are inconsistent with Claimant's statements. The Court disagrees. Upon review of the record the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that Claimant's subjective complaints as to her pain and her ability to sit and stand were not believable to the extent alleged, *i.e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. In particular, the ALJ noted that Claimant reported to Dr. Reddy that she was independent with daily activities and that Claimant "continues to exhibit generally consistent findings as those on the occasion she stated she was independent with daily activities," her straight leg tests were generally negative bilaterally, she continued on the same medication with minimal changes as to dose, the x-rays of her lumbar spine in 2021 indicated no acute process and no significant degenerative changes from the 2019 MRI, Claimant indicated in July 2021 that her pain was interment, and Claimant rarely, if ever, presented in any acute distress. (Tr. 26-29). Claimant further contends that the ALJ did not consider the extent of her daily activities or how she accomplished her daily activities. However, the ALJ expressly discussed Claimant's hearing testimony regarding her daily activities and ultimately concluded that, in light of the objective medical evidence, Claimant's pain is not as debilitating as alleged. (Tr. 27). There is no indication here that the ALJ misread the

Claimant's medical evidence taken as a whole, and her evaluation of Claimant's subjective statements is entitled to deference. *See Casias*, 933 F.3d at 801.

Nonetheless, because the ALJ failed to properly evaluate the opinion evidence of record, the decision of the Commissioner is therefore reversed, and the case remanded to the ALJ for further analysis of all the evidence in the record. If such analysis results in any change(s) to Claimant's RFC, the ALJ should redetermine what work Claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings.

**DATED** this 25th day of March, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**